**STATE of Maine**

v.

**Charles GILES.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 11, 1995.

Decided Jan. 3, 1996.

---

Geoffrey A. Rushlau, District Attorney, Patricia A. Mador, Assistant District Attorney, Wiscasset, for State.

Richard W. Elliott, Elliott & Elliott, Boothbay Harbor, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Defendant Charles Giles appeals from a judgment entered in the Superior Court (Lincoln County, *Atwood, J.*) convicting him of operating a watercraft while under the influence of alcohol in violation of 12 M.R.S.A. § 7801(9) (1994). The basis of Giles' appeal is a ruling entered in the District Court (Wiscasset, *Field, J.*) denying his motion to suppress evidence obtained during a routine safety check of his boat by the United States Coast Guard. Defendant argues that the random stopping of boats in Boothbay Harbor by the Coast Guard, absent any articulable suspicion of wrongdoing and absent any restraint on the officers' discretion, constitutes a violation of his right, under the United States and Maine Constitutions, to be free from unreasonable searches and seizures. Because the ruling of the District Court is in accord with the controlling precedent of the United States Supreme Court, we affirm the judgment.

The facts developed at the suppression hearing are not in dispute. On the evening of August 21, 1993, defendant was operating his boat in Boothbay Harbor. At approximately 11:30 p.m., a Coast Guard vessel approached his boat and ordered him to stop. Coast Guard officers then boarded defendant's boat and began a routine safety check, to determine whether the boat had the appropriate registration, licenses, and safety devices. The officers performed this duty under the authority granted to them by 14 U.S.C.A. § 89 (1995).[1] The stopping of the

---

1.  (a) The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address *inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel* and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any

vessel was not based on probable cause to believe a crime was being committed, or even on reasonable articulable suspicion of wrongdoing. The officers on duty that evening were ordered to stop vessels at random and board them for safety checks.

When the officers boarded the vessel and began the safety inspection, they suspected that defendant was intoxicated, based on his slurred speech, his difficulty keeping his balance, and the smell of alcohol on his breath. After conducting a field sobriety test, the officers concluded that defendant was operating the vessel under the influence of intoxicants. He was taken into custody and transferred to the Lincoln County Sheriff's Department.

After the District Court denied defendant's motion to suppress, he entered a conditional guilty plea in the Superior Court pursuant to M.R.Crim.P. 11(a)(2) (1995). He now argues that the boarding and search of his vessel was a violation of his state and federal right to be free from unreasonable searches and seizures.

If the seizure of the vessel was in violation of the United States Constitution, the evidence gathered as a result of the illegal seizure, including the observations made by the officers, could not be used against the defendant in a state criminal prosecution. *Mapp v. Ohio,* 367 U.S. 643, 653–55, 81 S.Ct. 1684, 1690–91, 6 L.Ed.2d 1081 (1961). The

resolution of this case is controlled by *U.S. v. Villamonte–Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983). In that decision the United States Supreme Court held that the suspicionless stop of a sailboat, anchored 18 miles inland on a channel that empties into the Gulf Coast, by United States Customs Officials [2], was not an unreasonable search. The Court held that the constitutional analysis applied to random stops of automobiles on our nation's roads is not directly applicable to the random stops of vessels on waters with access to the open ocean. The special exigencies of sea travel, including easy access to international waters and movement not limited to fixed highways, and the historical fact that seagoing vessels have always been subject to boarding by government officials, distinguish vessel stops from vehicle stops.

Defendant's attempt to distinguish *Villamonte–Marquez* from this case is unavailing. The fact that his boat was stopped by Coast Guard officials, at night, while the stop in *Villamonte–Marquez* was by Customs officials, in daytime, is a distinction without a difference.

Defendant next argues that the suspicionless stop of his vessel was in violation of his right to be free from unreasonable searches and seizures, guaranteed by the Maine Constitution.[3] Defendant correctly states that

part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or so as to render such vessel liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized.

(b) The officers of the Coast Guard insofar as they are engaged, pursuant to the authority contained in this section, in enforcing any law of the United States shall:

(1) be deemed to be acting as agents of the particular executive department or independent establishment charged with the administration of the particular law; and

(2) be subject to all the rules and regulations promulgated by such department or independent establishment with respect to the enforcement of that law.

(c) The provisions of this section are in addition to any powers conferred by law upon such officers, and not in limitation of any powers conferred by law upon such officers, or any other officers of the United States.

14 U.S.C.A. § 89 (1995) (emphasis added).

2. The U.S. Customs Officers in *Villamonte–Marquez* were acting under the authority of a statute similar to the one followed by the Coast Guard officials in this case:

Any officer of the customs **may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters** or, as he may be authorized, within a customs-enforcement area established under the Anti–Smuggling Act, or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

19 U.S.C.A. § 1581(a) (1995) (emphasis added).

3. The Maine Constitution provides as follows:

The people shall be secure in their persons, houses, papers and possessions from all unrea-

the Maine Constitution *may* be more protective of his right than the United States Constitution. Thus far, however, we have interpreted the Maine provision as coextensive with federal law. Moreover, we have not adopted an exclusionary rule for illegal search and seizure beyond that mandated by *Mapp v. Ohio*. *See e.g. State v. Tarantino,* 587 A.2d 1095, 1098 (Me.1991). Defendant offers no persuasive argument for doing so on this occasion.

sonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation.

The entry is:

Judgment affirmed.

All concurring.